IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CT-3078-D

DONALD R. HAIRSTON, JR., )
 )
       Plaintiff, )
 )
v. ) **ORDER**
 )
GONZALES, et al., )
 )
       Defendants. )

Donald R. Hairston, Jr. ("plaintiff"), a former federal inmate, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). Defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment. Plaintiff responded. As explained below, defendants' motion for summary judgment is granted.

I.

On May 29, 2007, when plaintiff filed this action, plaintiff was a federal inmate incarcerated at the Low Security Correctional Institution in Butner, North Carolina ("LSCI Butner"). See Compl. ¶ III. On January 25, 2008, plaintiff was released from incarceration. See http://bop.gov/iloc2/LocateInmate.jsp. Citing Bivens, plaintiff claims that defendants Dr. Tanfig Ansari, Artresiah Rogers, Robin Hunter-Buskey, Hank Simmons, and Mr. Williams were deliberately indifferent to his medical needs and that this indifference caused plaintiff continued pain from December 13, 2004, through January 31, 2006. See Compl. Attach. 4 ¶¶ 25–28; Am. Compl. 1–3.[1] Plaintiff also sues

---

[1] On October 1, 2007, this court ordered plaintiff to particularize his complaint by indicating whether he wished to proceed under the FTCA, Bivens, or both. See Hairston v. Gonzales, No. 5:07-CT-3078-D, [D.E. 6] (E.D.N.C. Oct. 1, 2007). Plaintiff filed an amended complaint on October 22, 2007, and indicated that he wished to proceed under both the FTCA and Bivens. In his amended

the United States under the FTCA for the alleged misdiagnosis of his chronic back condition which plaintiff contends caused needless suffering and resulted in incorrect treatment. See Am. Compl. 1; cf. Hairston, No. 5:07-CT-3078-D, [D.E. 8] (E.D.N.C. Nov. 7, 2007) (order substituting the United States as party defendant for Alberto Gonzales and allowing Bivens and FTCA claims to proceed).

II.

Plaintiff alleges that he sustained a back injury on December 15, 2004, while working in Food Services at LSCI Butner. See Compl. Attach. 4 ¶ 22; Am. Compl. 1. Specifically, plaintiff alleges that defendant Williams ordered him to move tables in the dining hall. See Compl. Attach. 4 ¶ 22; Am. Compl. 1. Plaintiff informed Williams that he had a back injury, and Williams persisted in his order. See Compl. Attach. 4 ¶ 22. Plaintiff moved the tables and hurt his back doing so. See Am. Compl. 1. Plaintiff informed his supervisor of his injury, and she told him to sit down. See Compl. Attach. 4 ¶ 22; Am. Compl. 1. Plaintiff also alleges that defendant Williams accused him of faking the injury, and that thereafter Williams "harassed" plaintiff by making him lift heavy bags of potatoes and boxes of fruit. See Compl. Attach. 4 ¶¶ 21–22; Am. Compl. 1.

On January 7, 2005, defendant Dr. Ansari, a Bureau of Prisons physician, examined plaintiff for his back pain. See Hunter-Buskey Decl. ¶ 3. Plaintiff also complained of muscle spasms and pain in his right leg which he stated began on January 5, 2005, while receiving physical therapy for pain in his right knee. Id. On January 18, 2005, Dr. Ansari sent plaintiff for an x-ray. Id. ¶ 4. The x-ray indicated that plaintiff had degenerative disc disease at the L4–5 vertebrae level. Id.

---

complaint, plaintiff made new allegations, failed to incorporate allegations from his original complaint, and failed to include certain necessary information from his original complaint. The court liberally construes pro se pleadings, and the court reviews the allegations contained in both the original and amended complaints. See, e.g., Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam).

In January 2005, defendant Hunter-Busker, a physician's assistant at LSCI Butner, began treating plaintiff for degenerative disc disease. Id. ¶ 5. This treatment continued through January 2006. Id. On February 25, 2005, Hunter-Buskey examined plaintiff, prescribed steroids for pain, and instructed him on stretching exercises. Id. ¶ 6.

In March 2005, defendant Rogers, a physical therapist at LSCI Butner, began treating plaintiff for degenerative disc disease. Rogers Decl. ¶¶ 3, 5. The therapy included moist heat and electrical stimulation for pain control and therapeutic exercises such as lumbar traction, stretching, and core stabilization/strengthening exercises. Id. ¶ 5. The program was designed to address "multiple subjective and objective symptoms such as muscle spasm/trigger points, degenerative joint disease, and a herniated disc." Id.

On April 18, 2005, defendant Hunter-Buskey again examined plaintiff. Hunter-Buskey Decl. ¶ 7. Due to plaintiff's continued lower back pain and radicular pain into his lower extremities, Hunter-Buskey ordered an MRI. Id. The MRI showed a large posterior central disc herniation producing severe central canal stenosis at the L4–5 vertebrae level. Id. On April 28, 2005, Hunter-Buskey examined plaintiff and removed him from all work detail. Id.; see Am. Compl. 1. Hunter-Buskey also recommended that plaintiff receive a consultation from an orthopedist. Hunter-Busker Decl. ¶ 7.

On May 18, 2005, an orthopedist examined plaintiff and recommended epidural steroid injections ("ESI") at the L4–5 vertebrae level. Id. ¶ 8. If no improvement followed this treatment, the orthopedist concluded that back surgery would be recommended. Id.

On June 20, 2005, plaintiff received his first ESI at Granville Medical Center in Oxford, North Carolina. Id. ¶ 9. The injections provided some relief for his back pain. However, in July 2005, plaintiff's medical providers determined that the ESI may be aggravating the pain in his lower

3

extremities. Id. ¶ 10.

On September 28, 2005, plaintiff was referred to a neurosurgery for consultation. Id. ¶ 11. On October 27, 2005, a neurosurgeon examined plaintiff and recommended a bilateral L4–5 discectomy. Id. ¶ 12.

Defendant Hunter-Buskey again referred plaintiff to the orthopedist in December 2005 when plaintiff's back pain worsened and he showed signs of pain in both his right and left extremities. Id. On January 3, 2006, an orthopedist examined plaintiff and recommended surgery. Id.

On January 30, 2006, plaintiff underwent surgery at Durham Regional Hospital to repair his herniated disc. Id. ¶ 13. On February 2, 2006, plaintiff again began receiving physical therapy. Rogers Decl. ¶ 8. In February 2006, plaintiff reported less "radicular signs" while continuing to experience pain. Hunter-Buskey Decl. ¶ 14. Plaintiff's progress was slow and complicated due to an altercation with another inmate on February 22, 2006. Id. Following the altercation, plaintiff was placed in the Special Housing Unit at LSCI Butner for two weeks and did not exercise. Id.

III.

Because the court has considered matters outside the pleadings, it treats defendants' motion as one for summary judgment. Fed. R. Civ. P. 12(d). Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4

587 (1986) (quotation omitted & emphasis removed). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 586–87.

IV.

The court first addresses plaintiff's Bivens claim. Defendants Rogers and Hunter-Buskey were commissioned officers in the Public Health Service ("PHS") when they provided medical treatment to Hairston. Rogers Decl. ¶ 1; Hunter-Buskey Decl.¶ 1. Therefore, plaintiff cannot proceed with his Bivens claim against Rogers and Hunter-Buskey. See 42 U.S.C. § 233(a); Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000); Cook v. Blair, No. 5:02-CT-609-BO, 2003 WL 23857310, at *1–*2 (E.D.N.C. Mar. 21, 2003) (unpublished); see also United States v. Smith, 499 U.S. 160, 170 n.11 (1990) (discussing absolute immunity provided to commissioned PHS officers under 42 U.S.C. § 233(a) and noting that the FTCA provides the exclusive remedy for a PHS officer's medical treatment). Accordingly, the court awards summary judgment to these defendants.

As for Dr. Ansari, plaintiff argues that Dr. Ansari was deliberately indifferent to his serious medical needs. Deliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). In order to establish liability, a plaintiff must show that the prison official had actual knowledge or awareness of the need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Moreover, the indifference must be substantial and objectively harmful to establish a constitutional violation. See id. at 837–40.

Delay in medical care, with no resulting significant injury, does not violate the Eighth Amendment. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1380–81 (4th Cir. 1993); Mendoza v.

5

Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Webb v. Hamidullah, No. 06-7381, 2008 WL 2537608, at *7 (4th Cir. June 6, 2008) (per curiam) (unpublished). Further, a prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle, 429 U.S. at 105–06. The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See Stanley v. Hejirika, 134 F.3d 629, 637–38 (4th Cir. 1998); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

Dr. Ansari examined plaintiff and sent him for x-rays. No evidence suggests that Dr. Ansari demonstrated intentional or reckless disregard for plaintiff's health or the pain he was experiencing. See Brown v. Harris, 240 F.3d 383, 389–90 (4th Cir. 2001). Rather, the evidence shows that each medical professional (including Dr. Ansari) throughly examined plaintiff and recommended treatment that each professional, in his or her medical judgment, felt appropriate in diagnosing and treating plaintiff's condition. If plaintiff is alleging that Dr. Ansari was negligent (and there is no evidence that he was), such an allegation (even if proven) is not deliberate indifference. See Estelle, 429 U.S. at 105–06; Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977) (per curiam). Accordingly, the court awards summary judgment to Dr. Ansari.

As for defendants Simmons and Williams, plaintiff refers to Simmons as the Food Service Assistant Administrator and Williams as the Food Service Supervisor at FSCI Butner. See Compl. ¶ III. Plaintiff contends that he hurt his back in the dining hall moving a table and that his supervisor notified Williams and Simmons of his injury. See Compl. Attach. 4 ¶ 22; Am. Compl. 1. Plaintiff also alleges that defendant Williams accused him of faking the injury, and that Williams subsequently "harassed" plaintiff by making him carry heavy bags and boxes. See Compl. Attach.

4 ¶¶ 21-22; Am. Compl. 1.

In order to establish liability, plaintiff must show that Simmons and Williams were deliberately indifferent to plaintiff's health or safety. As part of his burden of proof, plaintiff must show that the official had actual knowledge or awareness of an alleged need. See, e.g., Farmer, 511 U.S. at 837-40. In light of the record, there is no evidence of deliberate indifference on the part of Williams or Simmons. See id.; Brown, 240 F.3d at 389-90. Accordingly, the court awards summary judgment to Simmons and Williams.

V.

Turning to plaintiff's FTCA claim, the Inmate Accident Compensation Act, 18 U.S.C. § 4126 ("the Act"), provides the exclusive remedy against the United States for a federal inmate's work-related injuries. See 28 C.F.R. § 301.319. The Act precludes a suit under the FTCA for damages for a prisoner's work-related injuries. See United States v. Demko, 385 U.S. 149, 152-53 (1966); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996) ("[Section 4126] is a prisoner's exclusive remedy against the United States for work related injuries and bars a prisoner from suit under the Federal Tort Claims Act for work related injuries."); see also United States v. Wright, No. 94-6410, 1995 WL 378594, at *6 (4th Cir. June 27, 1995) (per curiam) (unpublished).

The Act's regulations define "work-related injury" as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "[T]he cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980) (per curiam). Section 4126 also provides the exclusive remedy where a prisoner's work-related injury is later aggravated by negligence or malpractice on the part of prison officials. See Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987). Thus, plaintiff's allegations that he sustained a back

7

injury while working at Food Services and that the negligence of prison medical personnel caused his injury to worsen fail to state a cognizable claim under the FTCA.

Alternatively, if the court assumes that plaintiff's back injury resulted solely from his medical treatment, his FTCA claim likewise fails. An individual may seek relief from the United States under the FTCA only where the same relief sought is available against a private person in the state where the cause of action arose. See, e.g., United States v. Muniz, 374 U.S. 150, 152–53 (1963); Miller v. United States, 932 F.2d 301, 303 (4th Cir. 1991). "State law determines whether there is an underlying cause of action; but federal law defines the limitations period and determines when that cause of action accrued." Miller, 932 F.2d at 303. "[F]ederal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004). In this case, plaintiff was incarcerated at LSCI Butner in North Carolina throughout the relevant time period. Thus, North Carolina is the state in which the alleged act or omission giving rise to the action occurred, and the court examines North Carolina substantive law.

North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2); see, e.g., Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001); Acosta v. Byrum, 180 N.C. App. 562, 572, 638 S.E.2d 246, 253 (2006). Alternatively, the complaint must allege facts establishing negligence

under the common-law doctrine of res ipsa loquitur. See N.C. R. Civ. P. j(3). Failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier, 308 F. Supp. 2d at 676–77; Moore, 139 F. Supp. 2d at 713.

Plaintiff's complaint fails to allege that he obtained certification from an expert willing to testify that his treating medical personnel did not comply with the applicable standard of care. Further, the doctrine of res ipsa loquitur "is allowed only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body); Schaffner v. Cumberland County Hosp. Sys., Inc., 77 N.C. App. 689, 691–93, 336 S.E.2d 116, 118–119 (1985) (patient's hand burned during ear surgery); Hyder v. Weilbaecher, 54 N.C. App. 287, 292, 283 S.E.2d 426, 429 (1981) (stainless steel wire left in patient). In light of the evidence, the doctrine of res ipsa loquitur does not apply to plaintiff's claim. Thus, plaintiff fails to meet the requirements of Rule 9(j), and his FTCA claim fails. Accordingly, the United States is entitled to summary judgment.

VI.

In sum, defendants' motion for summary judgment [D.E. 14] is GRANTED, and the action is DISMISSED. The clerk is DIRECTED to close the case.

SO ORDERED. This __11__ day of July 2008.

JAMES C. DEVER III
United States District Judge